Good morning, your honors. May I proceed? Yes. Thank you. Good morning, and may it please the court. Erin Koworkian on behalf of the appellant, Daren Phillips. I'd like to try and reserve two minutes for rebuttal, and I will keep track of my time. Now, unless the court directs me otherwise this morning, I'd like to primarily focus on the first issue raised in Mr. Phillips' appeal, and that is the violation of his property-based Fourth Amendment protections. The property test under the Fourth Amendment is straightforward. When a government agent physically trespasses or intrudes upon a constitutionally protected area or effect in order to obtain information, a Fourth Amendment violation has occurred. And as the Supreme Court explained in Jardines, this straightforward property-based test serves as a, quote, baseline that keeps easy cases easy. And that's exactly what Mr. Phillips' case presents to this court today, an easy case resolved under the property test of the Fourth Amendment. Here, when Officer Sawyer directed Mr. Phillips' ex-girlfriend to search Phillips' computer a second time at the Washoe County Sheriff's Office, this constituted a search within the meaning of the Fourth Amendment. And why didn't the private search doctrine apply based on her earlier search? The private search doctrine concerns only privacy interests, Your Honor. But this court in the Supreme Court, since the Supreme Court's 2012 decision in Jones, has been clear that a Fourth Amendment violation can occur under either a property test or a privacy test under the Fourth Amendment. And when a violation occurs under one, this court need not look to the other test. So the crux of the private search doctrine in removing certain searches from Fourth Amendment protection is frustration of privacy interests. And the Supreme Court's decision in Jacobson concerned only frustration of privacy interests without looking to whether or not a physical trespass, which is, again, an entirely separate test. The case law about the private search doctrine is about physical trespasses. It's opening a box at a FedEx. It's opening a computer at a computer repair store. So you'd need us to depart from the prior doctrine, which is this court would not need to depart from the doctrine, Your Honor. In fact, it's the government's position here that we would constitute an extension of that. And what this court can look to is the Supreme Court's decision in Jardines just one year after Jones. And in Jardines, what happened is the Supreme Court acknowledged in that case, the government's argument very similar to the government's argument here, which is that if an individual has no reasonable expectation of privacy, right, which is what the private search doctrine, in some circumstances tells us that if there's no expectation of privacy, it's removed from the Fourth Amendment. But in Jardines, what the court said was, we don't even need to reach that analysis. It's a physical intrusion and curse. And in fact, in Jardines, the government explicitly relied upon the Supreme Court's decision in Jacobson, which the Supreme Court acknowledged and said that in the Supreme Court acknowledged Jacobson's holding, but simply said that that wasn't something that the court even need get to, because the unlicensed physical intrusion had occurred. And that's where that's the point at which Mr. Phillips case is at today. But what was the physical intrusion?  In Jardines? In Jardines, it was intrusion into the curtilage of a home. So officers had come up with a narcotics dog into the curtilage of the home. And the Supreme Court said that that's a physical intrusion into a constitutionally protected area. Similarly here, and it's undisputed among the parties in this history of the Fourth Amendment and common law, so that there was a, there was a, there was a, an intrusion on his property. I don't, in this particular case, the intrusion on the property occurred by the conduct of a private party who opened the package. And she closes the package. And, and she, what she sees, persuades her that a crime has been committed. And she takes it to the to, to the police. And she, it's opened again to show the police to confirm her that's, that's the common thread in all the private, the private search cases. There's always, generally speaking, some form of intrusion on the property before the, by a private party. I think the critical distinction here, Your Honor, is Mr. Phillips is not challenging that initial private search that occurred at the ex-girlfriend's home. Well, what happened is once she brings the computer to the Washoe County Sheriff's Office, and remember, the computer, as Your Honor noted, at this point is closed, it's powered down, it's password protected. And so she comes into the Washoe County Sheriff's Office, and she describes- No, it's password protected in a, in a, I'm not quite sure, since she knows the password, and she knows how to open it. Correct, Your Honor. And so at the point where she- Sure. I apologize? You've done that. That's how she found out that it contained child pornography. That's correct, Your Honor. The point at which Mr. Phillips challenges the Fourth, Fourth Amendment search occurred, however, is once she arrives at the Washoe County Sheriff's Office, she doesn't arrive with the computer open and merely displaying the evidence that she would like to show officers. What she does is she describes what she's seen, and then it's only when the officer directs her to search the computer, and takes various steps that require her to physically operate the computer, such as opening it. Practical question. So arguably, what she told the police might have been enough to get a search warrant. And so they want to be sure that this, essentially, citizen complaint is sufficiently accurate. So they say to her, show us what you've seen. And you said that violates the Fourth Amendment. Yes, Your Honor. Even if what she had told them was enough, potentially enough to secure a warrant, as Your Honor has suggested, I'm aware of no case that sanctions a warrantless search merely because probable cause may have existed. And in fact, this court has squarely held, and I think here we may be getting into more of an inevitable discovery type discussion, but this court has squarely held that to uphold a warrantless search merely because probable cause might have existed would obviate the Fourth Amendment's warrant requirement. So regardless... I'm not suggesting that either. I'm just suggesting, in terms of what happened here, a private citizen opens a computer, sees what she believes to be clear evidence of a criminal activity. She takes it to the police. They say, show us what you've seen. That just doesn't strike me as anything wrong with that. And particularly given the line of cases under the private party search doctrine. Your Honor, I think this court may look to... If they hadn't done that, you would have said they should never have relied on her testimony alone. Well, I think what this court can look to, and it's not in the digital context, but this court had a recent decision, United States versus Dixon. And this was the case in which this court held that inserting a key into a car door lock constituted a Fourth Amendment search. And again, in that case, similar to Jardine's, the government's argument was that an individual doesn't have any sort of reasonable expectation of privacy in a door lock or the exterior of his car. That was resolved in an earlier Supreme Court case where they attached... I forget the name of it. I think it's Ryan. And they attached a GPS monitor to a car. And I think it was Justice Scalia wrote that that was a classic violate, intrusion on his effect. And that's what caused the Fourth Amendment violation. And I would have thought, for example, if a private person had inserted the GPS monitor on the car and the police followed it, there wouldn't have been any Fourth Amendment violation. The crucial distinction... Even though there were, let's say, privacy issues in a very broad sense involved there. I think the crucial distinction here is that at the Washoe County Sheriff's Office, the ex-girlfriend was no longer acting as a private citizen. She was following the directions of the officer, which essentially made her an agent or an instrument of law enforcement. And that's why this search is attributed... She wanted to. She went to the police. She was disturbed by what she saw. She wanted to show it to the police. To say that she was an agent of the police when she was essentially a co-operative, what I describe loosely as a co-operating witness. It seems to me, going overboard, that characterizes her as an agent of the police. If anything, she was making the police an agent of her own concerns about what she had seen and what kind of property the defendant had placed in her possession. I see that I'm over time. I would just direct the court then to the court's decision in United States v. Reed, which is cited in the briefing, where this court makes clear that when an individual or that when law enforcement or a government agent is directing the search or even just acquiescing in a particular search, that constitutes action on behalf of the government. I don't understand how that helps you, though, because in Jacobson, at the FedEx facility, it's officers who open the box the second time after the private individual opened it the first time. So whether it's a private individual acting with an officer or an officer themselves, the private search doctrine is based on the earlier private search. So this idea that she was an agent, I just don't see how it helps you. Quite simply, the Supreme Court had no occasion, and there is nothing in And remember, we were kind of under the legal framework of cats at that time. There's nothing in Jacobson that suggests the court considered the physical intrusion into the box itself. And so that's when we had this, when the Supreme Court reminded us in 2012 in Jones, that there's this second category of Fourth Amendment violations. That's what we're under now. And so again, this court, you know, Mr. Phillips isn't asking this court to deviate in any way from Jones. Jones is simply a different avenue, or excuse me, not to deviate from Jacobson. Jacobson is simply a different avenue by which a Fourth Amendment violation may occur. And Jones is an independent second avenue. And that's why we're asking the court to reverse on the physical intrusion. Thank you, Your Honors. Thank you. Let's hear from the government. I'll give you a few minutes for a rebuttal. OK, let's hear from the government. May it please the court, Bill Reed for the United States. The district court correctly applied the private search doctrine to hear a law enforcement review of child pornography images on Mr. Phillips' laptop computer that were shown to them by his fiancee at the police station. The district court also correctly focused on whether or not this review or that review by the detective exceeded the scope of the initial private search of Mr. Phillips' laptop by his ex-fiancee. The court, in the end, actually found that the detective's review was even narrower than that initial private search. Here, the detective abided by the private search doctrine by not exceeding the scope of Ms. Wenda's initial private search of Mr. Phillips' laptop computer. The property issue argued previously and in the brief, if there is tension between the private search doctrine and the property search that was discussed in the Jones case, the monitor placed on the car, at least one circuit has examined that tension. I believe it's the Sixth Circuit in Miller, and that's in my brief. And the Sixth Circuit essentially made a determination that if there is a tension between the two doctrines, that that is up to the Supreme Court to resolve that tension. Here, the district court, over a two-day hearing, carefully considered whether this private search doctrine, which no court has invalidated under, to my knowledge, and in the Sixth Circuit and the Miller case, which was a 2020 case, no court has undermined or found that the private search doctrine has been undermined by Jones and the trespass doctrine. Here, if there was a trespass, that trespass was committed by Ms. Wenda's in her private search, and the detective at the police station merely did what he was allowed to do under Jacobson, that is, examine what had previously been found by Ms. Wenda's in her private search. In fact, the district court found that this detective apparently was well aware of the private search doctrine, made every effort to follow the contours and the parameters of the private search doctrine by instructing Ms. Wenda's to show him only what she had previously seen and no further. The court found that there was good faith, no bad faith, by law enforcement here, and that the government witnesses, both the detective and Ms. Wenda's, were credible. So even if this court were to find that the private search doctrine has been upended by Jones and the trespass doctrine, the district court made a good faith, that the detective acted in good faith, and the good faith doctrine would, the government would argue, would preserve what was done here, what was carefully done here, with apparently a recognition of the Supreme Court. So could I ask you, the computer file, as I understand it, was called phone. And how do we know that the file wasn't automatically updating with things from the phone all the time, such that there would have been different contents when the police looked at it from what she had looked at earlier? Well, Your Honor, there's no evidence in the record that that had occurred or that was occurring in the district court. The only evidence is that the district court, in the district court, was that this file existed, and that Ms. Wenda's had, in fact, at least glanced every image in the file, and that what Detective Sawyer saw was just a couple of images, much narrower than what she had previously seen. But there's no evidence to support that, is the best answer I can give, Your Honor, as to that. Could I ask you, I want to ask you a question about some of our case law. In Toste, where the fellow took his computer into the repair shop, our opinion there makes note of the fact that it was a voluntary, he voluntarily granted access to the computer technician. And there's some funny language in Toste about that. Here, the defendant didn't give authorization to his fiance or girlfriend to access his computer, correct? Does that make any difference here? That is correct, Your Honor, but it makes no difference. And I'm familiar with what Your Honor is referring to in Toste. I don't know exactly what to make of that, but the Supreme Court precedent going well beyond, preceding well before Jacobson is that if evidence is presented to the police by someone who has had it come into their hands unlawfully, unreasonably or otherwise, it does not affect the, as long as the police didn't have involvement in that, it does not affect the character of that evidence and the ability of the government or law enforcement to use that evidence would be my response to the court. I am familiar with that language. I think that may have something, there may be some interplay there with the third party doctrine, but that's, I don't believe the third party doctrine. That's not, that wasn't present in this case. That wasn't argued. This is strictly a private search doctrine case in the review conducted by Detective Sawyer. I don't, is that responsive to Your Honor's question? Yes. Let me ask you another question. So when they're at the police station and he asked, the officer asked the girlfriend to show him what she saw, she had to turn on the computer and punch in the new passwords that she created. Are we fairly certain that when she did that and turned on the computer that he didn't see anything else? I think the district court made a finding that the only thing of any, any substantive value that he saw were the child pornography images that she had previously seen and there's no evidence that he saw anything else in the record, Your Honor. But he also, he also found, the district court also found a virtual certainty that they would only see those parts of the computer that Windez had already seen because they instructed her to stay within the limits of the private search. That, that, that is correct, Your Honor, that this detective apparently as a district court found was aware of the private search doctrine and he took the extra measure of giving her an admonition to go. You know, when I turn on, you know, I know this is completely, has nothing to do with what happened at the police station, but when I, when I turn on my computer and power it all up and get it going, I have a number of icons on the screen that have different labels and different names and whatnot. That didn't happen here? There's no evidence, certainly there was no evidence presented in the district court where this, this was actually, I believe it was litigated in the district court and there was no evidence of it presented and anything, I think the evidence was that anything that Detective Sawyer had seen, child pornography or otherwise, had previously been seen by Ms. Windez during her manipulation of the computer and her observations. The issue Your Honor's speaking to, I think has been dealt with in some capacity, I believe in the first circuit in this Rivera-Morales case, F3-1, it's in my brief, and I believe that was a cell phone in that situation and the court there grappled with whether or not there might be pop-up things on a cell phone. And the court ultimately in that case determined that a common sense approach applied in these kinds of situations as to whether or not there was any remote possibility that anything of any significance, which is verbiage from Jacobson, whether or not something of significance would be revealed during the review of the earlier private search. So here there is no evidence that anything other than child pornography was seen by Detective Sawyer. So I just have one last question, an argument that was advanced in the brief that we're dealing with a cell phone, which has all kinds of information on it, which seems to be unique in some respects in the case law, an iPad or whatever it was, the tablet. What's your response to that argument? Your Honor, if I understand Your Honor's question is, are there distinctions, legal distinctions that this court and other courts might draw or have drawn between cell phones and laptops and desktop computers? But I believe that this court and other courts have essentially said that cell phones are many computers, that there's the hardware and software, while there may be some slight distinctions based upon the usage of the instrument, that they're cell phones are many computers. So I think I would argue that it's a distinction without a difference in this case between a cell phone and a laptop. I see my time. I've gone over it. Unless the court has any additional questions, I'd respectfully submit it. Okay. Two minutes for rebuttal. Thank you, Your Honor. So I'll go ahead and start with privacy since that's where the court left off, and I'll swing back around to property interests if there's time. So we do know from the record that Officer Sawyer saw more than just the ER 618, Officer Sawyer testifies that he saw the lock screen that Ms. Wins had brought up, so he was observing over her shoulder as she took the steps needed to get into the phone folder. And why this is significant in this case is because unlike Toste, where the individual, the computer technician, just had the images up on the screen when the officers arrived, in the case at hand, Officer Sawyer was required to take additional steps and additional search through the computer to arrive at the images, and that's what violated Mr. Phillips' reasonable interest in privacy. But wouldn't the fiancee have had to do that to get to the phone file in the first search? She would, Your Honor. But as this court stated in United States v. Young, in Young, it dealt with a backpack that hotel employees had searched and then resealed. And this court held in Young that the sealed backpack, even though there had been a preceding search, still exhibited a reasonable expectation of privacy. And that's exactly the same case with Mr. Phillips' computer. It was again closed. It was password protected. It evidenced a reasonable expectation of privacy by Mr. Phillips. Now, this is, of course, if this court determines that the private search doctrine should even be, is even amenable to be applied to digital devices as a Why can't we read Young as limited to a particular problem about hotels where employees are always going into rooms? Because Young dealt with, Young made two holdings there. So Young did categorically exempt the private search doctrine from applying to residences. But Young also stated in the decision that the closed backpack still supported a reasonable expectation of privacy. So we, of course, maintain that in this case, a digital device is much more akin to a residence in terms of a significant privacy interest. But to the extent that this court deems it more similar to a container or the backpack at issue in Young, Young controls this case as well. And the search here violated the Fourth Amendment. If there are no other questions. How do you get around the good faith exception? Well, the only properly preserved good faith argument that the government makes here is that the private search doctrine exempted the officer's search itself. So the government below didn't argue that the excise warrants failed to establish probable cause. And the government also didn't argue good faith reliance as to the excise warrants below. But as to the search itself, for multiple so for multiple reasons, first, that the has it does not bear upon a physical intrusion, number one, so it couldn't be relied upon. But number two, because the private search doctrine, as this court stated in Young, has a restricted application, it's not amenable and it was misapplied to the digital device in this case. And because good faith reliance requires a specific, a specific holding authorizing the search at issue, even even if it was plausibly permissible under Jacobson, this court in Cano has said that that is not good enough. The good faith doctrine does not apply. Well, we have to in order to rule in your favor, wouldn't we have to essentially say that the the private search doctrine is no longer good law? This court would not have to say that this court simply all Mr. Phillips asked this court to do is to decline to extend the private search doctrines to the case at hand. So I would direct this court to the Supreme Court's decisions in Riley and the Supreme Court analyzed pre-digital Fourth Amendment doctrine that perhaps at first blush appeared that it may have applied to the searches at issue in that case. But the Supreme Court said, given the seismic changes in digital technology, this was not just a straightforward application of pre-digital doctrine. This was a wholesale extension of those prior doctrines. And the Supreme Court was not willing to do that in those cases. And we would urge that court not to do that here. OK, thank you, counsel. We appreciate your arguments this morning. Very helpful. Our next case for argument is United States of America versus right.
judges: PAEZ, FRIEDLAND, Korman